|  |  |  |
|---|---|---|
| **JADA TOYS, INC.,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | **Case No. 07 C 699** |
| v. | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **CHICAGO IMPORT, INC.,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Jada Toys, Inc. brought this action alleging seven breach of contract claims against Defendant/Counter-Plaintiff Chicago Import, Inc. (Second Am. Compl. ¶¶ 5-69.) [Dkt 143.] Chicago Import filed a counterclaim alleging that Jada breached a modified contract between the parties. (Third Am. Countercl. ¶¶ 12, 13.) [Dkt 145.] Federal jurisdiction in this case is premised on diversity of citizenship. 28 U.S.C. § 1332. Jada moves for summary judgment on all seven of its breach of contract claims [dkt 152], and Chicago Import moves for partial summary judgment on the issue of whether Jada waived its right to collect interest and attorneys' fees [dkt 157]. Chicago Import's motion for partial summary judgment is essentially a motion for summary judgment on its affirmative defense of waiver.

The parties have consented to the exercise of jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 32.] For the reasons set out below, Jada's motion for summary judgment on Counts I through VII is granted on the issue of liability, and Chicago Import's cross-motion for partial summary judgment is denied. Certain findings of fact are also made pursuant to Fed. R. Civ. P. 56(d)(1).

## FACTUAL BACKGROUND[1]

This is a breach of contract case. The parties in this case had a business relationship over the course of eight years, entering into hundreds of contracts during that time for the sale and purchase of toy cars, ultimately amounting to more than $4,000,000 in sales. In 2006, Chicago Import refused to pay for the last several orders it had placed. Jada filed suit for breach of contract, claiming damages in the amount of the unpaid invoices as well as contractual interest and attorneys' fees. Chicago Import counterclaimed, contending that Jada owes it a credit based on a past agreement between the parties which would more than offset the amount due on the unpaid invoices. Chicago Import also asserted an affirmative defense of waiver, contending that Jada waived its right to collect interest and attorneys' fees.

### A.    The parties' business dealings

Jada is a California corporation with a principal place of business in City of Industry, California, and is in the business of designing, manufacturing and selling toy products, including toy cars. (Def.'s LR Resp. ¶ 1, p. 1; Pl.'s LR Resp. ¶ 2.) Chicago Import is an Illinois corporation with

---

[1]    The following facts are taken from the parties' responses to the respective statements of fact filed pursuant to Local Rule 56.1, which are cited herein as: "Def.'s LR Resp. ¶ __" [dkt 157] and "Pl.'s LR Resp. ¶ __" [dkt 164], as well as from the exhibits submitted with those statements or responses to those statements, which are cited herein as: "Pl.'s LR Ex. __" [dkt 152] and "Def.'s LR Ex. __" [dkt 158]. Statements not responded to or not controverted by specific references to the record are deemed admitted. L.R. 56.1(b)(3).

It should be noted that Jada mis-numbered the paragraphs in its Statement of Facts, numbering the first four paragraphs as Nos. 1 - 4, but numbering what should have been paragraph No. 5 as No. 1, and continuing in that sequence with the effect of there being two Nos. 1, 2, 3, and 4. (Pl.'s LR Stmt.) [Dkt 154.] To identify the duplicate numbered paragraphs properly, the first four numbered paragraphs will be identified as being on page 1, or "p. 1," whereas the others will not have that denotation.

its principal place of business in Chicago, and is engaged in domestic importing and wholesale distribution of general merchandise, including toy cars. (Def.'s LR Resp. ¶ 2, p. 1; Pl.'s LR Resp. ¶ 1.) The parties' references to "Jada" include Jada's predecessor, a company called "BesToys, Inc." or "Best Toys, Inc." (Pl.'s LR Resp. ¶ 3.)

The parties agree that the Illinois Uniform Commercial Code (810 Ill. Comp. Stat. § 5/1-101 *et seq.*), which governs transactions involving the sale of goods, applies to the transactions at issue here. (Pl.'s Mem. at 3, 4; Def.'s Resp. at 5 [dkt 158]; Pl.'s Reply at 1, 5-6.)[2] The parties are merchants within the meaning of U.C.C. § 2-207 (810 Ill. Comp. Stat. § 5/2-207). (Answer to Second Am. Compl. ¶ 5.) [Dkt 146.]

The parties began doing business with each other in late 1998, and their relationship grew over time as Chicago Import continued to purchase more toy cars from Jada, ultimately becoming Jada's largest purchaser in the Midwest. (Pl.'s LR Resp. ¶¶ 3, 4.) Between 1999 and 2006, Chicago Import placed hundreds of orders with Jada, most of which were placed by telephone. (Pl.'s LR Ex. 2, Decl. of May Li ¶¶ 4, 14; Def.'s LR Ex. B, Dep. of Ashokkumar Punjabi at 96.) Chicago Import paid more than $4,000,000 to Jada in sales of toy cars during this time. (Pl.'s LR Resp. ¶ 12.)

For each order placed by Chicago Import, Jada sent Chicago Import a written confirmation in the form of an invoice, and then promptly shipped the goods ordered, which Chicago Import accepted. (*See generally* Def.'s LR Resp. ¶¶ 2-61.) The invoices sent by Jada contained the following information: item ordered (*e.g.*, '63 Corvette Stingray), quantity ordered (*e.g.*, 160),

---

[2]  The American Law Institute and the National Conference of Commissioners on Uniform State Laws promulgated a revised version of U.C.C. Article 2 in 2003. *Uniform Commercial Code: Official Text and Comments*, app. XX, 1964-65, 1978 (West 2008). However, Illinois retains the prior version of Article 2.

quantity shipped (*e.g.*, 160), price per unit (*e.g.*, $5.50), total amount billed for that particular line item (*e.g.*, $880.00), and total amount of the invoice, which consisted of the sum of each total line item amount (*e.g.*, $50,128.00). (Li Decl. Ex. A.) The invoices also listed the date of each invoice and date of order. (*Id.*) The invoices were clear as to the price being charged for each item ordered. (*See id*; Def.'s LR Resp. ¶¶ 13, 22, 31, 40, 49, 58.) In addition, the invoices contained the following provision on the front: "Delinquent accounts are subject to a service charge of 1½ % per month. If it becomes necessary to file suit for the collection of any account, costs including reasonable attorneys' fees shall be paid by the buyer." (Def.'s LR Resp. ¶ 5; Pl.'s LR Exs. 2a-g.) That provision was included on each of the hundreds of invoices sent to Chicago Import during the course of their relationship. (Def.'s LR Resp. ¶ 6; Punjabi Dep. at 96; Li Decl. ¶¶ 4, 14; Def.'s LR Resp. ¶¶ 14, 23, 32, 41, 50, 59.)

## B.      Chicago Import's payments to Jada

As evidence on the motion, Chicago Import submitted two "ledgers," documents that it used internally in its business, reflecting various aspects of its account with BesToys and Jada between December 2002 and April 2006. (Def.'s LR Ex. J; Suppl. Aff. of Ashokkumar Punjabi Exs. A, B [dkt 169].)[3] The ledgers show, in columns, the date and amount of each invoice (*e.g.*, from the previous example, $50,128.00), amounts paid by Chicago Import and dates of such payments, and running balances owed by Chicago Import after each invoice was received or payment was made. (*Id.*) The

---

[3]      Jada originally objected that the ledgers are inadmissible. (Pl.'s Reply at 12-13.) Chicago Import was given leave to file a supplemental affidavit by Mr. Punjabi to establish the ledgers as Chicago Import's business records. [Dkt 171.] Jada was given leave to file a response (*id.*) but did not do so.

ledgers indicate that Chicago Import's payments to Jada were "on account" rather than invoice basis. For instance, between March 25, 2003 and May 2, 2003, Jada sent Chicago Import nine separate invoices for amounts ranging from $1,251.00 to $18,657.60, yet Chicago Import made only one payment during that time (as opposed to nine separate payments), on May 20, 2003, for $50,000. (Punjabi Suppl. Aff. Ex. B.) In that example, the ledger reflects that Chicago Import's balance before submitting that payment was $63,448, and after making that payment was $13,448. (*Id.*) The ledgers reflect that Chicago Import made continual payments on its orders against the total sum amounts stated in the invoices throughout its relationship with Jada. (*Id.*; *see also* Def.'s LR Ex. A, Aff. of Ashokkumar Punjabi ¶ 23; Punjabi Suppl. Aff. ¶¶ 10-14; Def.'s LR Stmt. ¶ 22 [dkt 157].) According to the ledgers, Chicago Import made its last payment to BesToys on October 29, 2004 and to Jada on April 17, 2006. (Punjabi Suppl. Aff. Ex. A at 3, Ex. B at 7.)

Chicago Import also submitted copies of what appear to be Jada's records of Chicago Import's payment history, which reflected the same information contained in Chicago Import's ledger (*i.e.*, invoice date, invoice amount, amounts paid by Chicago Import, and running balances), as well as a handwritten request that Chicago Import send some money. (Def.'s LR Ex. K; Punjabi Suppl. Aff. Ex. C.)

## C.    The parties' meeting in October 2002

In October 2002, Eddie Punjabi, Chicago Import's President, met with Jack Li, Jada's President, and Eddie Chen, Jada's Sales Manager, at Chicago Import's warehouse in Chicago. (Pl.'s LR Resp. ¶¶ 5, 6.) At the meeting, Mr. Punjabi informed Mr. Li and Mr. Chen that he had discovered that Jada was selling toy cars to M & J Toys ("M & J"), a distributor in California, at a lower price

than it was selling to Chicago Import. (Pl.'s LR Resp. ¶¶ 5, 7.) According to Mr. Punjabi, Mr. Li promised at the meeting to modify the parties' current pricing arrangement to sell toy cars to Chicago Import at the same or lower price as that being charged to M & J. (Punjabi Aff. ¶ 10; Punjabi Dep. at 87-88, 91-92, 94.) Jada disputes that testimony (Pl.'s LR Resp. ¶¶ 6, 8), although Mr. Chen (Jada's Sales Manager) testified that Mr. Li did make a promise at the meeting to give Chicago Import "the best price . . . the lowest price." (Pl.'s LR Resp. ¶ 9; Def.'s LR Ex. D, Dep. of Eddie Chen at 46, 58.) Mr. Chen further testified, though, that by "best" or "lowest" price, Mr. Li meant the best price that Jada could give the Chicago Import account, which was not necessarily the same price it could give to the M & J account. (Chen Dep. at 52-53.) Mr. Chen conceded the latter distinction was not conveyed to Mr. Punjabi. (Chen Dep. at 53; Def.'s LR Ex. C, Dep. of Jack Li at 55.)[4] Mr. Punjabi testified that, in addition to agreeing to modify the parties' pricing arrangement going forward, Mr. Li promised to give a credit to Chicago Import for the difference in prices charged to M & J and Chicago Import for past transactions of toy cars. (Punjabi Aff. ¶ 11; Punjabi Dep. at 87-88, 92.) According to Mr. Punjabi, Mr. Li promised that "by the end of 2002, he would take a look at all of the invoices and would give Chicago Import a credit for the difference in price between the Toy Cars sold to M & J Toys and the Toy Cars sold to Chicago Import." (Punjabi Aff. ¶ 11.) Jada disputes that testimony as well. (Li Dep. at 45, 49, 55; Chen Dep. at 48-49.)

Although Jada disputes that Mr. Li made either of the promises claimed by Mr. Punjabi, the court will construe the facts regarding that dispute in favor of the non-movant, Chicago Import, for

---

[4]     Mr. Li denied that he ever told Mr. Punjabi that he would give Chicago Import the best or lowest price, contrary to Mr. Chen's testimony. (Li Dep. at 45.) Mr. Li also testified, however, that he had no recollection as to what the parties talked about during their conversation at the warehouse. (Li Dep. at 44.)

purposes of Jada's motion only, and assume that those promises were made. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (the court must construe all facts and draw all reasonable inferences in favor of the non-moving party in determining whether a genuine issue of material fact exists).

**D.    Subsequent communications between parties regarding the price-credit dispute**

After the parties' discussion in October 2002, Jada never issued a credit to Chicago Import for its past purchases of toy cars.  (Pl.'s LR Resp. ¶¶ 13, 21; Punjabi Aff. ¶ 22.)  Jada also never lowered Chicago Import's prices to match M & J's prices.  (Pl.'s LR Resp. ¶ 12.)  Over the next three and a half years, Chicago Import continued to purchase toy cars from Jada at a higher price than M & J was paying, but contends that it was unaware it was continuing to pay more for toy cars than M & J was paying.  (Punjabi Aff. ¶ 13.)  Jada disputes that contention, pointing to Mr. Punjabi's testimony that he reviewed the invoices received from Jada.  (Punjabi Dep. at 96-97.)  However, while Mr. Punjabi admitted that he had reviewed the invoices, he said he was unaware of what price Jada was charging M & J.  (*Id.*)

Mr. Punjabi complained to Mr. Chen on a regular basis and left several unanswered messages for Mr. Li regarding the credit for past invoices.  (Pl.'s LR Resp. ¶ 13; Punjabi Aff. ¶ 14.)  In addition, Mr. Punjabi sent letters to various Jada representatives on that topic.  On July 1, 2005, Mr. Punjabi sent a letter to Mr. Li requesting that he review Chicago Import's past invoices "in order to match the price on line with M & J" and provide a credit.  (Def.'s LR Ex. E.)  Finally, Harvey Luong, Jada's CFO, responded on September 15, 2005, stating that Jada had reviewed Chicago Import's account and concluded that the price being charged to Chicago Import was the "best price" based on Jada's

policy and company's guideline. (Pl.'s LR Ex. 2h.) Mr. Luong further stated that Jada did not have a "price protection" policy that would allow customers to obtain a credit for prior invoices. (*Id*.) Mr. Luong concluded that he would be happy to discuss the "pricing issue for future shipments." (*Id*.)

The next written communications in the record are letters from Mr. Punjabi to various personnel at Jada dated September 22, 2005, May 15, 2006, June 6, 2006, and June 12, 2006, in which Mr. Punjabi reiterated his concern regarding the "price-credit" dispute, and stated that he had tried to contact Mr. Li several times to resolve the issue but was unsuccessful. (Def.'s LR Exs. F, G, H, I; Pl.'s LR Resp. ¶¶ 15-20.) On June 15, 2006, Jada's attorney told Mr. Punjabi in a letter that Chicago Import's request for a credit on past invoices was declined. (Pl.'s LR Ex. 2i.)

## E.    The contracts at issue and present motions before the court

Although Chicago Import made continual payments on its account with Jada, with a final payment of $40,000 on April 17, 2006, the parties agree that Chicago Import failed to pay the amounts charged for Chicago Import's last six orders, which were placed on March 27, April 3, April 6 (two separate orders), April 12, and April 14, 2006, as well as the amount charged for an order placed prior to that, on August 18, 2004. (Def.'s LR Resp. ¶¶ 1, 10, 19, 28, 37, 46, 55.)[5] The contract prices for the orders placed on those dates were $16,999.84, $21,801.50, $33,960.60, $6,556, $1,760, $46,428, and $8,073.60, respectively. (Def.'s LR Resp. ¶¶ 9, 18, 27, 36, 45, 54, 63.)[6] Chicago Import

---

[5]     The offer made on August 18, 2004, was to BesToys. (Def.'s LR Resp. ¶ 55.) It is undisputed that BesToys assigned all of its rights under the contract to Jada. (*Id*. ¶¶ 64, 66, 67.)

[6]     The contract price for the order placed on March 27, 2006 was actually $50,128.00, not $16,999.84. (Pl.'s LR Ex. 2a.) However, the parties agree that the amount left unpaid on that invoice is $16,999.84, because Chicago Import made a payment of $40,000.00 on April 17, 2006 which was applied towards that invoice, and there was an outstanding balance on the account of

failed to pay the amounts on each of those invoices, despite the fact that Jada sent written confirmations of those orders to Chicago Import and promptly shipped the goods ordered, just as it normally did when Chicago Import placed an order. (Def.'s LR Resp. ¶¶ 2, 3, 9, 11, 12, 18, 20, 21, 27, 29, 30, 36, 38, 39, 45, 47, 48, 54, 56, 57, 63.)

Viewing each unpaid invoice as a separate contract, Jada alleges that Chicago Import breached seven contracts, and Jada filed suit for breach of contract. Jada also claims that as of January 15, 2009, it has incurred $76,013.57 in attorneys' fees and costs in connection with this litigation, and $67,946.45 in contractual interest on the unpaid invoices. (Pl.'s LR Stmt. ¶¶ 65, 66; Pl.'s LR Ex. 3, Decl. of Dun Ren Tzeng ¶¶ 3, 4; *id.* Exs. 2a-g.)

Chicago Import filed a counterclaim, alleging that Jada owes it damages in excess of $500,000 for failing to charge Chicago Import the same prices that were charged to M & J or issue a credit as it contends was agreed by the parties in October 2002. (Def.'s LR Resp. ¶ 9; Punjabi Aff. ¶ 24; Third Am. Countercl. ¶¶ 12, 13, 14.) Chicago Import further claims that Jada waived its right to collect attorneys' fees or interest because Jada never attempted to collect interest or attorneys' fees from Chicago Import even though its account with Jada was delinquent on a continuous basis from 1999 to 2006. (Def.'s LR Stmt. ¶ 22; Punjabi Aff. ¶ 23.) Jada first asserted its claimed right to collect interest and attorneys' fees in 2006 when Chicago Import failed to pay for the contracts at issue. (Pl.'s LR Resp. ¶ 22; Pl.'s LR Exs. 2i, 2j.)

---

$6,871.84 prior to that payment. (Def.'s LR Resp. ¶ 9.)

# LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ¶ 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The court may not make credibility determinations, "choose between competing inferences" or weigh the evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Id.* The non-moving party must present evidence of "evidentiary quality" demonstrating the existence of a genuine issue of material fact. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

On cross-motions for summary judgment, each party's motion is considered separately and all reasonable inferences are drawn against the party whose motion is under consideration. *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007).

**DISCUSSION**

In deciding whether Jada is entitled to summary judgment on its breach of contact claims, this opinion will consider first whether there were contracts between the parties, and, if so, whether the terms regarding interest and attorneys' fees included on the confirming invoices sent by Jada to Chicago Import became part of the contracts, and then whether Chicago Import breached the seven contracts at issue.

Because the court concludes that contracts were formed including those terms and that Chicago Import breached the contracts, the last issue is whether Chicago Import is entitled to summary judgment on its affirmative defense that Jada waived its right to collect interest and attorneys' fees.

**I.      Whether there were enforceable contracts between the parties**

Under Illinois law, the elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) a resulting injury to plaintiff. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (citing *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. 1990)).

In this case, the first element is met; there was a valid and enforceable contract with respect to each of the seven contracts alleged by Jada. To establish the formation of a valid and enforceable contract under Illinois law, a plaintiff must prove that there was an "offer, acceptance and existence of valuable consideration." *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 611 (Ill. App. 1st Dist. 1999). In addition, the contract's essential terms must be definite and certain. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987). Each order by Chicago Import to Jada

constituted an offer to purchase goods. Jada's prompt shipment of the goods constituted acceptance of each offer. *See* U.C.C. § 2-206(1)(b) (810 Ill. Comp. Stat. § 5/2-206(1)(b)) (stating "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods"). There was also consideration: Jada shipped the goods based on Chicago Import's promise to pay for the goods ordered.

Finally, the terms were sufficiently definite to support the existence of a valid and enforceable contract. Chicago Import argues that the price to be paid for the goods in each contract was indefinite, pointing to the October 2002 discussion and Mr. Punjabi's various complaints made after that discussion. But the prices for each order were clearly set out on each confirming invoice, and Mr. Punjabi acknowledged that he reviewed the invoices received from Jada. In fact, Chicago Import placed six of the seven orders at issue here in 2006, after Jada expressly told Mr. Punjabi in September 2005 that Chicago Import would not receive M & J prices. Chicago Import continued to place orders, accept the goods Jada shipped, and make some payments after that time. Based on that conduct, Chicago Import's offers to purchase after September 2005, which include the last six contracts at issue, can only be construed as offers to purchase at the prices stated on the invoices. Whether Jada's billing Chicago Import at the price stated in the invoices is a breach of a separate promise by Jada is a different issue and is the subject of Chicago Import's counterclaim.

Although the order to BesToys preceded the September 2005 conversation, the same reasoning applies to it. BesToys accepted Chicago Import's offer to buy through a confirming invoice that set out the price. Chicago Import accepted the goods shipped pursuant to the invoice. Whether BesToys' invoicing at that price breached a separate agreement is a separate issue.

Also, the conduct by both parties recognized the existence of a contract, and the evidence shows that the parties intended to make a contract. *See* U.C.C § 2-204 (810 Ill. Comp. Stat. § 5/2-204) (stating that a contract for sale of goods may be made in any manner sufficient to show agreement, "including conduct by both parties which recognizes the existence of such a contract," and "does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy").

In summary, there was an offer and acceptance, consideration, and definite terms sufficient to support the existence of a contract. A valid and enforceable contract was formed with respect to each of the seven contracts at issue.

## II. Whether the additional terms regarding interest and attorneys' fees became part of the parties' contract

U.C.C. § 2-207 states in relevant part:

Additional Terms in Acceptance or Confirmation.
(1)     A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2)     The additional terms are to be construed as proposals for addition to the contract. *Between merchants such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received*.

810 Ill. Comp. Stat. § 5/2-207 (emphasis added). Jada's written confirmations for the seven offers at issue operated as acceptances under subsection (1), even though they included the additional terms regarding interest and attorneys' fees, because there is no evidence that Jada's acceptance of the offers

was expressly made conditional on Chicago Import's assent to the additional terms. Thus, the focus of the inquiry here will be on subsection (2).

Although Jada has the overall burden of showing that Chicago Import breached the contracts, Chicago Import has the burden under subsection (2) of showing that the additional terms did not become part of the contracts. *Comark Merchandising, Inc. v. Highland Group, Inc.*, 932 F.2d 1196, 1201-02 (7th Cir. 1991) (stating that, between merchants, the party opposing the inclusion of additional terms has the burden of proving that one of the exceptions applies). The additional terms proposed by Jada in its confirming invoices became part of each of the contracts unless: (a) the offer expressly limited acceptance to the terms of the offer; (b) the terms materially altered the contract; or (c) Chicago Import had already given Jada notice of its objection to the terms or objected within a reasonable time after receiving notice of the terms.

There is no evidence that Mr. Punjabi's offers to purchase toy cars were expressly limited to the terms of those offers to the exclusion of any additional terms. Nor is there any evidence that Mr. Punjabi ever objected to either the interest charge or attorneys' fees provision prior to this lawsuit. Thus, neither subpart (a) nor subpart (c) of subsection (2) applies. The only question is whether the additional terms "materially alter[ed]" the contract so that subpart (b) precludes them from becoming part of the parties' contract.

In Illinois, the test for whether an additional term would be a material alteration to the contract is "whether the addition constitutes an unreasonable surprise to one of the bargaining parties." *Comark*, 932 F.2d at 1201(citations omitted). In determining whether an additional term constitutes an unreasonable surprise, courts may consider the course of conduct and prior dealings between the parties, as well as customary industry usage of the term. *Id.* at 1202-03. The determination is made

on a case-by-case basis.  *Id.* at 1203.

### A.        Interest charge provision

The interest charge provision did not materially alter the parties' contracts here.  A provision for charging interest on overdue invoices is a textbook example of a term that does not materially alter the contract.  The Original Official Comment to § 2-207 states, as an example of a term that does not materially alter the contract, "a clause providing for interest on overdue invoices . . . where they are within the range of trade practice . . . ."  *Uniform Commercial Code: Official Text and Comments*, app. XX, § 2-207 cmt. 5, at 1979.[7]  *See also Extel Corp. v. Cermetek Microelectronics, Inc.*, 539 N.E.2d 320, 323 (Ill. App. 1st Dist. 1989) (relying on § 2-207's commentary to conclude that interest clause did not constitute material alteration); *Herzog Oil Field Serv., Inc. v. Otto Torpedo Co.*, 570 A.2d 549, 551 (Pa. 1990) (concluding that interest charge term did not materially alter contract based on statute commentary and fact that "it is common in commercial circles . . . for balances to be subjected to interest charges").

Chicago Import has provided no evidence that an interest charge on an overdue balance is uncommon in commercial transactions like the ones at issue here, or that the interest charge was outside the range of trade practice.  Moreover, Chicago Import was familiar with Jada's forms, terms, and practices, including its asserted right to charge interest, because the parties had engaged in hundreds of transactions using the form with the interest charge provision on it.  Accordingly, the interest charge provision contained in each of Jada's written confirmations did not constitute an

---

[7]        As noted in footnote 2 above, Illinois has not adopted the 2003 revisions to Article 2 of the U.C.C.  Thus, the Original Official Comments to that Article are relevant to the Illinois statute.

unreasonable surprise to Chicago Import, and it became part of the parties' contracts.

### B.     Attorneys' fees provision

The court also concludes that the attorneys' fees provision did not materially alter the contracts.  Again, Jada and Chicago Import engaged in hundreds of transactions over the course of seven years, all of which involved written confirming invoices stating on the front that if it became necessary to file suit for the collection of any account, the buyer would be liable for Jada's reasonable attorneys' fees.[8]  Courts in Illinois and this circuit have found that additional terms posed no unreasonable surprise in situations where there had been far fewer prior dealings between the parties. *See e.g. Schulze and Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 715 (7th Cir. 1987) (arbitration clause was not an unreasonable surprise where the same clause had been included in nine prior confirmation forms because plaintiff "had ample notice that the tenth confirmation would be likely to include an arbitration clause"); *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 765 (N.D. Ill. 1994) (holding that exculpatory clause in five separate invoices became part of contract); *Barliant v. Follett Corp.*, 483 N.E.2d 1312, 1316 (Ill. App. 1st Dist. 1985) (transportation and insurance charges contained in invoice were not material alterations where buyer had received 24 prior invoices containing same language and thus there was "no unfair surprise"); *see also Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 392-93, 395-96 (7th Cir. 1992) (limitation of liability clause that had been included in hundreds of prior invoices was enforceable despite evidence that buyer was unaware of the provision).  Although none of those cases involved an attorneys' fees provision, courts in other circuits have found attorneys' fees provisions to be

---

[8]     The BesToys invoice also contained that notice.  (Pl.'s LR Ex. 2g.)

enforceable and not a material alteration, based on similar reasoning. *See e.g. Mid-South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1123-24 (5th Cir. 1985) (affirming that attorneys' fees clause became part of parties' contract based on parties' extensive course of dealing); *Boyd v. Oscar Fisher Co., Inc.*, 210 Cal. App. 3d 368, 379 (Ca. App. 1989) (same).[9]

Although Chicago Import cites several decisions concluding that an attorneys' fees provision constituted a material alteration to the parties' contract, those cases are distinguishable from the present case. In *Comark,* 932 F.2d at 1202-03, for instance, the Seventh Circuit affirmed a finding that the inclusion of an attorneys' fees clause would materially alter the contract, but there was no "established course of dealing between the parties" and the transaction was "not one involving parties familiar with the other's forms, terms, and practices." Likewise, *American Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1190-91 (10th Cir. 1992), also cited by Chicago Import, involved only one written confirmation and no prior course of dealing between the parties. In a third case cited by Chicago Import, *Herzog Oil*, 570 A.2d at 551-52, the court found that a provision calling for a lump sum of 25% of the contract amount to be added as attorneys' fees in the event of collection changed the obligor's financial obligation to "a material degree" and was not "readily expected or anticipated." Such is not the case here, where the clause provides for "reasonable attorneys' fees."

Lastly, Chicago Import does not provide any evidence that an attorneys' fees provision is not commonly used in the industry. In summary, Chicago Import has not pointed to any evidence, as is its burden, demonstrating that the inclusion of the attorneys' fees provision constituted a material

---

[9] Jada cites a case from this circuit in which an attorneys' fees provision was found enforceable and not a material alteration to the parties' contract, *Telpro, Inc. v. Renello*, 66 F.3d 328 (Table), 1995 WL 542730 (7th Cir. 1995). However, that case is an unpublished decision from 1995 and therefore cannot be relied upon as precedent. Seventh Circuit Court of Appeals Cir. R. 32.1.

alteration to the contracts at issue here.

Accordingly, both the interest charge provision and the attorneys' fees provision became part of the parties' contracts.

### III.   Whether Jada has demonstrated the remaining three elements of its breach of contract claims

The existence of valid contracts having been established, the remaining three elements of a breach of contract claim are plaintiff's performance of the contract, defendant's breach of the contract, and a resulting injury to plaintiff. *Priebe*, 240 F.3d at 587.

Jada performed its obligation under each of the contracts. It is undisputed that Jada delivered the goods ordered by Chicago Import with respect to each of the seven telephone orders at issue. (Def.'s LR Resp. ¶¶ 2, 3, 11, 12, 20, 21, 29, 30, 38, 39, 47, 48, 56, 57.) That is sufficient to satisfy the second element. "The obligation of the seller is to transfer and deliver." U.C.C. § 2-301 (810 Ill. Comp. Stat. § 5/2-301.)[10]

Chicago Import breached the contracts. Chicago Import has failed to pay the amounts stated in the confirming invoices for the goods it received pursuant to its seven contracts with Jada. (Def.'s LR Resp. ¶¶ 9, 18, 27, 36, 45, 54, 63.) *See Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc.*, 218 F. Supp. 2d 974, 978 (N.D. Ill. 2002) (plaintiff met third element of breach of contract claim where defendant never paid plaintiff for goods it received).

---

[10]   At oral argument, Chicago Import argued that Jada did not fully perform its obligations under the contracts because Jada never made any price adjustments or issued a credit pursuant to the parties' agreement allegedly reached in October 2002. However, whether Jada was required to issue a credit is a matter to be decided in conjunction with Chicago Import's counterclaim for breach of that alleged agreement. It does not affect the court's determination that Jada fully performed its obligations under the seven contracts at issue by delivering the goods ordered.

Chicago Import pleaded an affirmative defense of payment, notwithstanding the undisputed evidence that it has not paid for the toy cars shipped pursuant to the invoices at issue. (Answer to Second Am. Compl. at 28.) Chicago Import's payment defense is based on its argument that the amount Jada owes it pursuant to the claimed October 2002 price credit agreement more than offsets the unpaid invoices. (*Id.*) Whether Jada owes Chicago Import any amount under that claimed agreement is a separate matter to be decided at the trial on Chicago Import's counterclaim. If that agreement is proved at trial, the amounts awarded to Chicago Import will offset any damages awarded to Jada and, if greater, the net result may be in Chicago Import's favor. But that separate agreement is not a defense to liability on Jada's contract claims.

Finally, with respect to the last element, there is no doubt that Chicago Import's breach injured Jada. Jada shipped the goods to Chicago Import, yet never received any payment for them. Accordingly, Jada suffered a monetary injury.

Thus, Jada is entitled to summary judgment on its claim that Chicago Import breached each of the seven contracts at issue and on Chicago Import's affirmative defense of payment. Chicago Import owes Jada the amount of $135,579.54, which is the sum of the amounts listed in each of the confirming invoices for the seven contracts at issue ($16,999.84, $21,801.50, $33,960.60, $6,556, $1,760, $46,428, and $8,073.60). Ultimately, that amount may be offset by any damages for which Jada may be found liable to Chicago Import after trial on Chicago Import's Counterclaim.

IV.   **Chicago Import's cross-motion for summary judgment on its affirmative defense that Jada waived its right to collect interest or attorneys' fees**

As discussed above, Jada claims as damages not only the amount of the invoices but also

accumulated interest and attorneys' fees.  Chicago Import pleaded an affirmative defense of waiver, alleging that Jada has waived any right to collect interest and attorneys' fees.  (Answer to Second Am. Compl. at 28.)  Chicago Import now has cross-moved for summary judgment on that issue.  (Def.'s Resp. at 8-10.)  Chicago Import argues that it had a "delinquent account" on a regular basis between 1999 and 2006, yet Jada never attempted to collect interest or attorneys' fees.  (Def.'s Resp. at 8-9; Punjabi Aff. ¶ 23.)   Jada contends that the evidence fails to demonstrate that it waived its right to collect interest and attorneys' fees under any of the contracts at issue.  (Pl.'s Mem. at 11.)  Because Chicago Import is the movant on its cross-motion, it bears the burden of demonstrating the absence of a genuine issue of fact.  All reasonable inferences are drawn in favor of the opposing party, Jada. *Celotex Corp.*, 477 U.S. at 323-24.

> The Illinois Supreme Court described waiver under Illinois law:
>
> Waiver is defined as the intentional relinquishment of a known right.  Waiver may be made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived a right.
>
> . . . . .
>
> Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver.  An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it.

*Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991) (citations omitted).  The Supreme Court added that whether a party has waived a right is a question of fact.  *Id.*  The Illinois appellate courts have observed that whether sufficient facts have been presented to establish a waiver is a question of law.  *See Northwest Diversified, Inc. v. Desai*, 818 N.E.2d 753, 771 (Ill. App. 1st Dist. 2004) (citing *Batterman v. Consumers Illinois Water Co.*, 634 N.E.2d 1235, 1236 (Ill. App. 3rd Dist. 1994).

Mr. Punjabi states that Chicago Import's account "has been delinquent on a continuous basis between 1999 and 2006, since it made payments on account and not on a per invoice basis." (Punjabi Aff. ¶ 23; *see also* Punjabi Suppl. Aff. ¶¶ 10, 12, 13.) Chicago Import's ledgers show running balances owed by Chicago Import between December 2002 and April 2006. (Punjabi Suppl. Aff. Exs. A, B.) Chicago Import also points to the copies of its payment history sent by Jada with the handwritten words, "Please send money" on them, none of which contain an interest charge or demand for attorneys' fees. (Punjabi Suppl. Aff. ¶¶14-15, Ex. C.)

Jada contends that the evidence does not support a finding of waiver because there was no "open and notorious breach" by Chicago Import until Chicago Import refused to pay any amount on the last invoices. (Pl.'s Reply at 13.) Jada points out that even Chicago Import's ledgers show that "periodic payments were continually made, effectively paying off old invoices and leaving partial balances under newer invoices." (*Id*.) Chicago Import does not submit evidence of Jada's record-keeping system or policies regarding when accounts are considered delinquent.

Although there is some evidence supporting Chicago Import's claim that its account was delinquent so that interest could have been charged, construing all reasonable inferences in favor of the non-movant Jada, genuine issues of material fact prevent summary judgment in favor of Chicago Import on the issue of whether Jada waived its right to collect interest and attorneys' fees. While the evidence indicates Chicago Import maintained a running balance with Jada over the course of their relationship, the evidence is not sufficient to establish as a matter of law that Jada has waived its claim for interest. Indeed, even Chicago Import seems to concede that fact. *See* Def.'s Resp. at 10 (stating that "there are genuine issues of material fact which exist regarding whether Jada Toys waived its right to collect interest and attorneys' fees from Chicago Import on delinquent invoices").

Furthermore, although the parties analyze the claims together, the issue of waiver could have different outcomes for the interest and the attorneys' fees claims, because those claims are based on different contract terms. As just discussed, the interest provision is triggered by "delinquent accounts." In contrast, the attorneys' fees provision states, "If it becomes necessary to file suit for the collection of any account, costs including reasonable attorneys' fees shall be paid by the buyer." It is undisputed that this is the first lawsuit filed by Jada against Chicago Import for "the collection of any account." Jada reiterated its right to collect attorneys' fees in a letter to Mr. Punjabi in 2006, prior to the filing of this lawsuit against Chicago Import in 2007. (Pl.'s LR Exs. 2i, 2j; Pl.'s LR Resp. ¶ 22.) While there is some evidence suggesting Jada waived its right to interest, Chicago Import has not identified any evidence that supports its position that Jada waived its claim to attorneys' fees.

Chicago Import's motion for partial summary judgment on its affirmative defense of waiver is denied.

## CONCLUSIONS AND FINDINGS PURSUANT TO RULE 56(d)

Fed. R. Civ. P. 56(d) provides:

(1) If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts – including items of damages or other relief – are not genuinely at issue. The facts so specified must be treated as established in the action.

(2) An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.

The court finds and orders as follows:

1. For the reasons set out above, Jada is entitled to summary judgment on its seven breach

of contract claims and on Chicago Import's affirmative defense of payment. Because the issue of whether Jada has waived any right to interest on the unpaid amounts and to attorneys' fees remains, Jada's damages cannot be determined at this time. Thus, Jada's motion is granted as to liability alone, pursuant to Rule 56(d)(2).

2. Chicago Import's cross-motion for summary judgment is denied.

3. Pursuant to Rule 56(d)(1), the court finds that the following facts are not genuinely in dispute:

A. Chicago Import breached each of the seven contracts set out in the Second Amended Complaint.

B. Chicago Import is liable to Jada in the amount of $135,579.54, which is the sum of the amounts listed in each of the confirming invoices for the seven contracts at issue ($16,999.84, $21,801.50, $33,960.60, $6,556, $1,760, $46,428, and $8,073.60). That amount does not include any interest or attorneys' fees to which Jada may be entitled, and may be offset by any damages for which Jada is found to be liable to Chicago Import on Chicago Import's Third Amended Counterclaim.

C. Jada never filed a lawsuit against Chicago Import before the present lawsuit.

4. The remaining issues for trial are:

A. Whether Jada has waived its right to interest on its unpaid invoices or its right to attorneys' fees for collection of unpaid amounts;

B. If Jada is entitled to interest, the amount of such interest;

C. If Jada is entitled to attorneys' fees, the amount of those fees[11]; and

---

[11]     The parties agreed at oral argument that the court would determine the amount of any attorneys' fees to which Jada might be entitled. Any attorneys' fees must be reasonable, in accordance with applicable law, and assessed after all of the claims are decided.

D.  Whether the parties entered into the agreement alleged in Chicago Import's Counterclaim and, if so, any damages flowing therefrom.  More specifically, whether the parties entered into and Jada breached an agreement to: (1) issue a credit to Chicago Import for the difference in prices charged to M & J and Chicago Import for the sale of toy cars prior to October 2002; and (2) sell toy cars to Chicago Import at the same price that Jada was charging M & J between October 2002 and September 2005.

This matter is set for status on September 25, 2009, at 9:30 a.m. to set a date for trial on the remaining issues.


**IT IS SO ORDERED.**

*Geraldine Soat Brown*

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**


**DATED: September 18, 2009**